

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable E. E. Coons
County Attorney
Sherman County
Stratford, Texas

Dear Sir:

Opinion Number 0-5000
Re: Whether Sherman County
may compel bondholders
to permit the county
to pay off unmatured
bonds to extent of
sinking fund and to
refund remaining out-
standing unmatured
bonds.

We are in receipt of your letter of recent
date requesting our opinion on the question stated therein.

The facts as disclosed in your letter are as
follows:

"In the year 1922 Sherman County issued
$62,500.00 in Courthouse bonds, dated July
10, 1922, and maturing serially. At the
present time there is outstanding of this
issue $42,500.00. These bonds bear 6% int-
erest, and none are now, and never been, in
default. Sherman County has in its sinking
fund applicable to these bonds approximately
$15,000.00.

"Owing to the present conditions of the bond
market, the Commissioners' Court has asked for
an opinion as to whether the sinking fund can
be used to redeem these bonds, and whether the

other bonds may be refunded at a lower
rate of interest. The bonds do not carry
an option for payment prior to maturity."

The questions submitted are:

"1. May Sherman County require the holders
of the above bonds, to the extent of its sink-
ing fund, to submit their bonds for redemption
at par and accrued interest? (It being assumed
that Sherman County will wish to use its accum-
ulated sinking fund for such purpose.)

"2. May Sherman County refund the remaining
outstanding bonds by issuing new bonds at a
lower rate of interest, and require the holders
of such bonds to submit them for redemption at
par and accrued interest?"

It is true that at the time these bonds were
issued Article 657, Revised Statutes, 1911, read as
follows: "Where bonds have been legally issued, or
may be hereafter issued, by any county for any of the
purposes named in Article 610, new bonds bearing the
same or a lower rate of interest may be issued, in con-
formity with existing law, in lieu thereof."

It is also true that Section 7 of the "Bond
and Warrant law of 1931" contains the following lan-
guage: "Such Commissioners' Court and such governing
bodies shall have the right at all times to issue re-
funding bonds for the refunding of any outstanding bonds
legally issued and outstanding interest on any legally
issued outstanding bonds, subject to laws applicable
to the issuance of refunding bonds and without the nec-
essity of any notice or right to a referendum vote."

From the foregoing it is seen that counties
are given the right to refund outstanding bonds. But
is that right contingent upon the consent of the bond-
holders? We are of the opinion that it is unless the
bonds contain an option of redemption under which the
county reserves the right to call the bonds upon a

given date.  Dallas County v. Lockhart, 96 S. W. (2d)
60.  It is our opinion that if the articles of the stat-
utes hereinabove quoted undertook to authorize counties
to compel the holders of unmatured bonds to surrender
them either for cash or for refunding bonds bearing
a lower rate of interest, such articles would be uncon-
stitutional.  Since the original bonds did not contain
an option to redeem them prior to their maturity, any
such law would impair the obligation of the contract
between the county and the bondholder.  In Vol. 12,
page 1056, Corpus Juris, is found the following lan-
guage:  "Any enactment of a legislative character is
said to 'impair' a contract which attempts to take from
a party a right to which he is entitled by its terms,
or which deprives him of the means of enforcing such
a right."  On page 1058, same volume of Corpus Juris,
it is said:  "Where a contract contains an express
promise for the payment of interest * * * the obliga-
tion as to interest is within the protection of the
Constitution, and any subsequent statute is void which
attempts to remit such interest, or to change the rate
at which it shall be computed."

The Supreme Court of California in the case
of Los Angeles County v. Rockhold, 44 Pac. (2d) 340,
100 A. L. R., 149, had before it a question similar
to the one under consideration.  An Act of the Legis-
lature providing for the refunding of certain bonds
was under attack.  We quote the following from the
opinion of the court:

"The second ground of unconstitutionality
urged by respondent is that by the 1933 Act
the contract of the bondholders has been im-
paired.  As already stated, the act provides
that the refunding may take place when 75 per
cent. of the holders of outstanding bonds con-
sent.  Under the refunding scheme, the nature
of the security is changed and the principal
and interest of the bonds are reduced.  It is
plain, therefore, that the obligation of the
existing bonds is impaired.  As to the 75 per
cent. or more bondholders who consent, there
is, of course, no complaint.  But as to the
nonconsenting bondholders, including those who

Honorable E. E. Coons, page #4, O-5000

are absent and those incapacitated or incompetent, who may hold up to 25 per cent. of the bonds, there is an obvious impairment, if their bonds are canceled and they are forced to take new bonds with a different security, in a lesser amount, and bearing a reduced interest, or if their security is lessened * * *".

The refunding act was held invalid upon the grounds, among others, that it failed to protect adequately the rights of the dissenting bondholders. That the same result would be reached by the Texas courts is indicated by the language used in the case of Love v. Rockwall Independent School District, et al., 225 S. W. 263. In that case the question was considered whether a tax levy to pay the interest and provide a sinking fund for a certain issue of bonds was invalid because of the fact that the bonds had not been presented to the Attorney General for his approval. After holding that this fact did not invalidate the levy, the court made the following statement:

"This action of the board of trustees was legal. Besides, just recently the defendants located the holders of said common school district bonds and obtained an agreement that the refunding bonds would be accepted in lieu of common school district bonds, or that they would accept cash out of the proceeds of the sale of the refunding bonds."

In view of the foregoing you are advised that Sherman County can not require the holders of the bonds to submit their bonds for payment at par and accrued interest, and can not require such holders to submit their bonds for refunding at a lower rate of interest.

Of course this opinion is limited to non-option bonds. In the case of option bonds the issuing

agency reserves the right to call the bonds in for re-demption at stated times. In the case of Dallas County v. Lockhart, supra, it was held that option bonds could be redeemed either by payment or by the issuance of refunding bonds.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By    /s/ C. F. Gibson
         C. F. Gibson
         Assistant

CFG/s/lm

E.p.p.

APPROVED DEC 3, 1942

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
By   BWB
      CHAIRMAN